AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___7/12/2024___

# UNITED STATES DISTRICT COURT
### for the
Western District of Oklahoma

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

3500 South Douglas Boulevard, Trailer 4, Oklahoma City, Oklahoma 73150 WITH ACCESS AND CONTROL OF THE APPURTENANCES, OUTBUILDINGS, VEHICLES, CURTILAGE, AS WELL AS THE PERSONS FOUND AT THE PREMISES

)
)
)
)
)
)
)

Case No.  MJ-24- 563-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A(a)(2)(A) | Receipt and Distribution of Child Pornography |
| 18 U.S.C. s. 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See the attached Affidavit of HSI Special Agent Kyle Itkin, which is incorporated by reference herein.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle Itkin, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 6, 2024

City and state:  Oklahoma City, Oklahoma

_____
*Judge's signature*

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Kyle Itkin, a Special Agent with Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.  I am currently employed as a Special Agent ("SA") with HSI and have been since November of 2022. I have attended the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Brunswick, Georgia. Formerly, I was a Uniformed Division Officer of the United States Secret Service for approximately four and a half years. Training for this position required attending the Uniformed Police Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia and the Uniformed Division Training Course in Beltsville, Maryland. I hold a Bachelor of Science in Criminology from George Mason University and double minors in Intelligence Analysis and Information Technology.

2.  I am currently assigned to the HSI Oklahoma City, Oklahoma office. As part of my duties, I am tasked with investigating federal criminal cybercrime violations. I have training and experience conducting child exploitation and child pornography investigations. I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal investigators. I am aware of numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media and violations of Federal law regarding child pornography (as defined in 18 U.S.C. §§ 2252 and 2252A).

1

## PURPOSE OF AFFIDAVIT

3. This Affidavit is submitted in support of an application for a search warrant for the location specifically described in Attachment A of this Affidavit: the residence located at 3500 South Douglas Boulevard, Trailer 4, Oklahoma City, Oklahoma 73150 (hereinafter referred to as the **"SUBJECT PREMISES"**) for property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed and intended for use, and which has been used as a means of committing criminal offenses, namely, violations of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B) (Possession, receipt, and distribution of child pornography). These items are more specifically described in Attachment B of this Affidavit.

4. Facts set forth in this Affidavit are based upon my personal observations, training, prior investigations, and, where noted, information relayed to me by other law enforcement officers. Since this Affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every fact known to me concerning this investigation.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of 18 U.S.C. § 2252A, relating to material involving the sexual exploitation of minors.

6. It is a violation of 18 U.S.C. § 2252A(a)(2)(A) for any person to knowingly receive or distribute any child pornography by using any means or facility of interstate or foreign commerce, or that has been mailed, shipped, or transported in or affecting interstate or

foreign commerce by any means, including by computer. It is a violation of 18 U.S.C. § 2252A(a)(5)(B) for any person to knowingly possess the same.

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B:

8. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

9. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

10. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as

well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

11. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

12. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

13. "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

14. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a

range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

15. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

16. "Records," "documents," and "materials," include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

17. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

18. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of

conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## CYBERTIPLINE REPORTS

19. The National Center for Missing and Exploited Children ("NCMEC") is an organization that, among other things, tracks missing and exploited children and serves as a repository for information about child pornography. Federal law requires NCMEC to operate the CyberTipline and requires Electronic Service Providers ("ESP"s) to report apparent instances of child pornography offenses. Providers also have the discretion to submit reports concerning planned or imminent child pornography offenses. Companies that suspect child pornography has been stored or transmitted on their systems report that information to NCMEC in a CyberTipline Report (or "CyberTip"). The ESP submits the report and uploads content to NCMEC via a secure connection. Aside from required information such as incident type, date, and time, reporters can also fill in voluntary reporting fields such as user or account information, IP addresses, or information regarding the uploaded content itself, as well as other information it may have collected in connection with the suspected criminal activity. The ESP may or may not independently view the content of the file(s) it uploads. Using publicly available search tools, NCMEC then attempts to locate where the activity occurred based on the information the ESP submits, such as IP addresses. NCMEC then packages the information from the ESP along with any additional information it has, such as previous related CyberTips, and sends it to law enforcement in the jurisdiction where the activity is believed to have occurred.

## BACKGROUND ON GOOGLE LLC AND GOOGLE DRIVE

20. Google LLC is an American multinational corporation and technology company focusing on online advertising, search engine technology, cloud computing, computer software, quantum computing, e-commerce, consumer electronics, and artificial intelligence ("AI"). Google also offers a large portfolio of products and services, including Google Drive. Google Drive is a cloud-based storage service that enables users to store and access files online. The service syncs stored documents, photos, and videos across all the user's mobile devices, computers, and tablets. Google Drive's main competitors include Apple iCloud, Dropbox, and Microsoft OneDrive.

## BACKGROUND ON DROPBOX, INC

21. Dropbox is a file hosting service, similar to Google Drive, operated by the American company Dropbox, Inc. Dropbox offers cloud storage, file synchronization, personal cloud, and client software. Dropbox has over 700 million users registered across 180 countries. Dropbox offers free accounts, known as Dropbox Basic, which allows for users to have two gigabytes of online storage. Dropbox also offers other paid products, such as Dropbox Family, which allow for up to two terabytes of storage.

## PROBABLE CAUSE

22. On March 5, 2024, HSI Oklahoma City was contacted by HSI Pretoria, South Africa as part of a long-term, wide-reaching investigation. Their information revealed there was an individual residing in Oklahoma City who was the administrator of an encrypted messaging group "school cp" on Chat Application A[1]. In the messaging group, child pornography

---

[1] Chat Application A is known to law enforcement as it is part of a separate investigation targeting individuals trading in Child Sexual Abuse Material using various end-to-end encrypted messaging applications. Access to these groups is by invitation only, often through other Chat Application A

was being distributed among its members. The group's activity was monitored for activity between November of 2023 and January of 2024. The administrator of the group had the username "bbubba bubba" and an associated phone number of (405) 414-7227. On May 30, 2024, I submitted a subpoena to T-Mobile for subscriber information for the suspect account. I received a response that the subscriber of the phone number was "Brian Hoffert" with a listed address matching that of the **SUBJECT PREMISES**.

23. Oklahoma Department of Corrections records show that this phone number is also the same phone number given by an individual named Dale Robin HOFFERT, Jr. for his sex offender registration in the state of Oklahoma. HOFFERT listed this phone number on his registration between the dates of May 8, 2022 and May 9, 2024. HOFFERT was previously convicted on October 1, 2007 of a felony in the state of Oklahoma for forcible sodomy of a juvenile. Records also show that, from August 1, 2017 through May 8, 2022, HOFFERT used a different phone number, (405) 201-0502, for his sex offender registration. I conducted records checks on this phone number and found that it was reported on eleven separate NCMEC CyberTips during the year of 2020. I contacted Oklahoma City Police Department ("OCPD") Inspector Jonathon Davis, to whom these CyberTips were assigned, and requested associated records and information.

24. Prior to Inspector Davis, OCPD Inspector Cargil was assigned the NCMEC CyberTips. These CyberTips were generated by the ESP Google, Dropbox, and Instagram. Inspector Cargil obtained and served multiple search warrants to the ESPs for records associated with

---

groups. Revealing the application name associated with Chat Application A may lead to the destruction of evidence and is therefore withheld.

the accounts listed on the CyberTips. Responsive data from the ESPs led Inspector Cargill to identify HOFFERT as the suspected user of these accounts.

25. On June 13, 2020, at approximately 11:35:35 AM CDT, Google notified NCMEC of a user uploading Child Sexual Abuse Material ("CSAM"). The identified account belonged to username "Mark Hoffman," with verified phone number (405) 201-0502 and verified email address gotenks.7790@gmail.com. The ESP reviewed the contents of one of the twenty-five files submitted to NCMEC and reported that the file contained CSAM. I reviewed this file and observed that it contained a one minute and fifty-one second video that was made up of multiple short video clips combined, all containing child pornography. The video depicted different juvenile pre-pubescent boys engaging in oral sex. Following this CyberTip, an additional nine separate CyberTips were generated on this same user for uploading files containing CSAM in June of 2020. Open-source records indicate there are multiple individuals by the name of Mark Hoffman in the state of Oklahoma; however, the verified phone number, as well as the information below, lead me to believe that HOFFERT was the user.

26. On May 23, 2021, at approximately 10:43:24 AM CDT, Dropbox notified NCMEC of a user uploading CSAM. The identified account belonged to username "Brandon Walker" with verified email address bwalker202035@gmail.com. The ESP reviewed the contents of all three of the files submitted to NCMEC and reported that two of the files were images that contained CSAM. I reviewed the two images and observed that they both depicted juvenile pre-pubescent females with their vaginal areas exposed. Open-source records indicate there are numerous individuals by the name of Brandon Walker in the state of

Oklahoma; however, the information associated with the verified email address leads me to believe that HOFFERT was the user.

27. The Google account bwalker202035@gmail.com is suspected to be controlled by HOFFERT. According to NCMEC, Google reported that there were two Device IDs associated with Google account gotenks.7790@gmail.com: 4124535854133045365 and 3795039537032246863. Both bwalker202035@gmail.com and gotenks.7790@gmail.com share the same Device ID:3795039537032246863. This device is listed as a Coolpad Legacy (CP3705A) Android smartphone with IMEI 860667043278816. Gotenks.7790@gmail.com was listed on 10 NCMEC cybertips, along with the phone number (405) 201-0502, which was previously identified as a phone number used for HOFFERT's sex offender registration.

28. On May 9, 2024, HOFFERT reported to the OCPD Sex Offender registration office and updated his current phone number (405) 414-7227 to (405) 205-0618. HOFFERT also self-reported that he resides alone at the **SUBJECT PREMISES** and is employed at Denny's. On May 30, 2024, subscriber information was requested from Verizon for the listed phone number of (405) 205-0618. On June 6, 2024, Verizon responded to the request with documentation that listed the account owner as Dale R. HOFFERT with an effective date of May 22, 2024[2] and an email of gote3384@gmail.com.

29. On May 30, 2024, I conducted surveillance of the **SUBJECT PREMISES** with HSI SA Nick Ustach, which is in a trailer park. I observed a vehicle parked out front of the residence. The vehicle was a blue 2016 Chevrolet Trax with Oklahoma license plate

---

[2] Based upon information and belief, HOFFERT was also the prior user of this phone number, but it was assigned to a different device before May 22, 2024.

04OU49. This license plate was checked in law enforcement databases and was revealed to be registered to Dale HOFFERT, Jr., at the **SUBJECT PREMISES**.

30. On June 24, 2024, I conducted surveillance of the **SUBJECT PREMISES** with HSI SA Chris Donovan. I observed a vehicle parked out front of the residence. A black 2005 Hyundai Elantra with Oklahoma license plate PDC088 was parked out front of the trailer. Law enforcement records show this vehicle is registered to Brian Hoffert at the **SUBJECT PREMISES**. A secondary owner is listed as Jessica Hoffert. Law enforcement surveillance has revealed that Brian Hoffert is at least an occasional overnight guest at the **SUBJECT PREMISES**, if not a resident.

## BACKGROUND ON COMPUTERS AND THE INTERNET

31. Computers and digital technology play a large role in the way individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, storage, communication, and distribution.

32. The commonality of digital cameras and smartphones with built-in cameras has created an environment that allows those interested in, to easily produce child pornography. Resolution of these pictures and videos are sharper than ever before. When a photograph or video is taken with a digital camera or smartphone, it is saved as a digital file. Digital files can then be stored in the internal memory, or on a removable memory card in the camera, smartphone, or transferred to another computer device. These memory cards can store large amounts of data, some of which provide enough space to store tens of thousands of high-resolution photographs.

33. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly

referred to as the hard drive) can store thousands of images at very high resolutions. Hard drives, either standalone or internal, that can hold multiple terabytes of information are not uncommon. In addition, there are numerous options available for the storage of digital files. Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. CDs and DVDs are not as instantaneous though. They require software to save or "burn" files onto them. Some media storage devices, like smartphones and/or mobile phones, can easily, and are often perpetually concealed and/or carried on an individual's person.

34. A device known as a modem allows any computer to connect to another computer using telephone, cable, or wireless connection. Electronic contact can be made to millions of computers around the world. Child pornography can be transferred via email or through file transfer protocols ("FTP"s) to anyone with access to a computer and the internet. Individuals can also use online resources to retrieve and store child pornography. Online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer with access to the internet.

35. The internet affords individuals several venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. For example, distributors of child pornography can use membership-based/subscription-based websites to conduct business, allowing them to remain relatively anonymous. Additionally, distributors can use

file sharing software or P2P software. This P2P software allows users to share files with other users running compatible software on this P2P file-sharing network.

36. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or internet service provider client software, among others). In addition to electronic communications, a computer user's internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Accordingly, a computer forensic examiner can often find evidence of deleted files on a user's computer. Thus, if a user has downloaded image files, viewed them, then deleted them, a computer forensic examiner can often find evidence of such actions and maybe even the deleted images themselves. Even in cases where online storage is used, evidence of child pornography can still be found on the user's computer or external media in most cases.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

37. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

13

38. Child pornography collectors usually start collecting child pornography by obtaining free images and videos of child pornography widely available on the internet on various locations and then escalate their activity by proactively distributing images they have collected, often for the purposes of trading images of child pornography with others, as a method of adding to their own collection of child pornography.

39. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

40. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

41. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years. Collectors prefer not to be without their child pornography for any prolonged period of time.

42. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

43. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

44. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

45. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto optical, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available to determine whether it is included in the warrant that authorizes the search. This sorting process can take weeks or months, depending on the volume of data stored, and is generally difficult to accomplish on-site.

46. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the

system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

47. To fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media). Finally, I know that many modern smart cell phones, including Apple iPhones and Samsung-brand phones, can be encrypted by the user using his finger and/or thumbprints or facial recognition features to lock and unlock the device. Without the user's prints or face, the devices are difficult, if not impossible, for law enforcement personnel to unlock. Accordingly, I am requesting that, to the extent law enforcement seizes any smart cell phones or other computers reasonably believed to belong to HOFFERT, or to be under his access and control, and described in Attachment B during a search of the **SUBJECT PREMISES** (described in Attachment A), and if such device(s) feature such encryption, then law enforcement may, while executing the search warrant at the **SUBJECT PREMISES**, depress the finger and/or thumb prints of Dale Robin HOFFERT Jr. at the **SUBJECT**

**PREMISES** onto any such encryption feature to attempt to unlock the device or try to unlock the devices using HOFFERT's facial recognition features.

48. Furthermore, because there is probable cause to believe that the computer, and its storage devices, reasonably believed to belong to HOFFERT, or to be under his access and control, are all instrumentalities of crime(s) described in this Affidavit, they should all be seized as such.

## CONCLUSION

49. Based on the above information, there is probable cause to believe the items described in Attachment B are presently located within the **SUBJECT PREMISES** described in, and set forth in Attachment A. The digital media therein, and the items thereof, constitute evidence or instrumentalities of violations of 18 U.S.C. § 2252A. Accordingly, I respectfully request the Court authorize the search of the **SUBJECT PREMISES** and seize evidence and instrumentalities of the above violations of federal law and related contraband reasonably believed to belong to HOFFERT or to be under his access and control.

Kyle Itkin
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN before me this _16th_ day of July 2024.

SUZANNE MITCHELL
United States Magistrate Judge

17

## ATTACHMENT A

## DESCRIPTION OF PREMISES

3500 S Douglas Blvd, Trailer 4, Oklahoma City, OK 73150 is a light-colored trailer home with brown shutters and window frames. This search will include all appurtenances, outbuildings, the attached garages, the person of Dale Robin HOFFERT, Jr. if present, any vehicles present, and any computers and storage media found therein.

The property is as shown below:







## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1.    Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2.    All computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.    All notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8), or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.    In any format and medium, all originals, computer files, copies, and negatives of child pornography, as defined in 18 U.S.C. § 2256(8), and visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

5.    All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic

messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.     All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography, as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.     All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.     All notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make child pornography accessible to members.

9.     All records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote

computer storage, and user logins and passwords for such online storage or remote computer storage.

10.     All cameras, film, videotapes, or other photographic equipment.

11.     All visual depictions of minors engaging in sexually explicit conduct.

12.     All address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13.     All documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

14.     All diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15.     All fruits, instrumentalities, and evidence, in any format or medium, of violations of 18 U.S.C. § 2252A's enumerated offenses.

16.     If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint or face to unlock the device, then, while executing the search warrant at the **SUBJECT PREMISES**, a law enforcement officer may press the finger or thumbprint of Dale Robin HOFFERT, Jr. onto the device to try to unlock it or use his face to unlock the device via facial recognition features.